**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KATHY SANTANA,

      Plaintiff-Appellant,

v.

CITY AND COUNTY OF DENVER,

      Defendant-Appellee.

No. 05-1111

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE District of Colorado**
**(D.C. NO. 03-CV-00774)**

---

David L. Worstell (Robert W. Kiensnowski, Jr., with him on the briefs) of
Worstell & Kiensnowski, Denver, Colorado, for Plaintiff-Appellant.

Robert A. Wolf (Mindi L. Wright, with him on the brief), Denver City Attorney's
Office, Denver, Colorado, for Defendant-Appellee.

---

Before **BRISCOE**, **McCONNELL**, and **SILER**,[*] Circuit Judges.

---

**SILER**, Circuit Judge.

      Plaintiff Kathy Santana appeals the district court's grant of summary

judgment dismissing her gender discrimination claims against the City and

---

      [*]The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for
the Sixth Circuit, sitting by designation.

County of Denver, Colorado (the "City"). Santana, a sergeant with the Denver Sheriff's Department, claims disparate treatment and disparate impact discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, et seq., state law breach of contract for failure to promote, and error by the district court in its discovery rulings. For the reasons stated below, we **REVERSE** and **REMAND** with respect to Santana's disparate impact claim against the City. We **AFFIRM** summary judgment for the City on all other claims.

## I. Facts and Procedural Background

Santana began working for the Denver Sheriff's Department in 1977 as a deputy sheriff. She was promoted to the rank of sergeant in 1992. In 2000, she applied for a promotion to the position of captain. As part of the application process, she completed the required skills assessment examination, scoring a 93.3 out of a possible 100. The Career Service Authority then certified her, along with other top scoring candidates, to be interviewed by the Sheriff's Department. The interview consisted of three questions and candidates were provided as much time as they needed to fully respond.

Santana acknowledged that she did not perform well during her interview. She explained that she found it difficult "to go in front of three of [her] supervisors" and felt it was "very hard to promote [herself]" in an interview setting. According to the interviewers, Santana appeared to be uncomfortable,

became emotional, and did not answer the questions completely. When asked by the panelists if she was upset, Santana admitted that she was.

At the conclusion of the interview process, the panelists each developed a list of their top six or eight candidates in descending rank order. Santana was not included as a top candidate on any interviewer's list. The rankings were later compiled into one list, and thereafter, according to the City, individuals were promoted off the master list in descending rank order. Over a two-year period, the Sheriff's Department promoted a total of ten sergeants to the rank of captain, including eight men and two women. The second female received her promotion to captain only after the first female resigned.

Santana alleges that she and other women not selected for promotion were more qualified and more experienced than the males ultimately chosen. She argues that the City's proffered non-discriminatory reason for not promoting her – poor interview performance – was merely a pretext for gender discrimination. Furthermore, she contends that the promotion process was biased against women, and, therefore, resulted in a disparate impact on female candidates.

Applying the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), the district court first found that Santana did state a prima facie case of gender discrimination because she demonstrated that she was qualified for the rank of captain. She had received outstanding recommendations and past performance evaluations, she had higher

scores on several objective promotion criteria than some of the promoted males, and she had extensive experience as a supervisor. The court next determined that the City had set forth legitimate, non-discriminatory reasons for hiring male candidates instead of Santana, primarily that Santana performed poorly in her interview. Finally, it concluded that Santana did not establish a genuine issue of material fact as to whether the proffered legitimate reasons were a pretext for gender discrimination.

As to Santana's disparate impact claim, the district court first denied summary judgment but later dismissed the claim for lack of standing. It reasoned that under *Coe v. Yellow Freight Sys., Inc.*, 646 F.2d 444, 451 (10th Cir. 1981), Santana has standing to bring her disparate impact claim only if she was the "victim of discrimination by the general practice which allegedly resulted in a discriminatory impact on a protected group." Because the court had dismissed Santana's disparate treatment claim, it concluded that she could not show that she was a victim of a discriminatory promotion process that was adversely impacting women in the Sheriff's Department. Thus, the court held that Santana has not suffered an injury-in-fact and does not have standing to advance the remaining disparate impact claim.

The district court also granted summary judgment on Santana's breach of contract claim. It found that the Denver Charter provisions and the accompanying Career Services Rules govern her employment with the City as an implied

employment contract. These provisions require that all appointments or promotions of employees be made solely upon merit and ability to perform the work and through a process including a skills assessment examination and interviews. They also prohibit discrimination on the basis of race, color, creed, national origin, sex, or political affiliations. However, because the district court concluded that the City did not participate in discriminatory treatment in failing to promote Santana, the City did not breach the employment contract. The court also noted that "[a] disparate impact claim does not result in a breach of contract based on personnel policies and procedures where those procedures were followed yet promotion disparities nonetheless occurred."

## II. Discussion

We review the district court's grant of summary judgment to the City de novo, construing the facts in the light most favorable to Santana and resolving all reasonable inferences in her favor. *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the City is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

### A. Disparate Treatment

Neither party disputes the district court's determination that Santana has established a prima facie case of gender discrimination. Therefore, the only issue

on appeal is whether Santana raises a genuine factual dispute concerning pretext. We conclude that she did not.

In a Title VII disparate treatment claim, once a prima facie case has been established, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for not promoting the plaintiff. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). After the defendant has offered its non-discriminatory explanation, the prima facie case is rebutted and the burden of proving pretext shifts back to the plaintiff. *Id.* at 255.

A plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)). However, "mere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

The City submits that Santana was not promoted because of her poor interview performance. The panelists recalled that Santana had been very emotional and seemed unable to endure the stress of the interview. Consequently,

they questioned whether she would be able to withstand the stress associated with a captain's duties and responsibilities.

Santana counters with the following two arguments as to why we should reject the City's justification and infer pretext: (1) the evidence shows that she was significantly more qualified for promotion to captain than one of the men who was promoted, and (2) the promotional process was very subjective.

We will draw an inference of pretext where "the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457-58 (10th Cir. 1994)). We have cautioned that "pretext cannot be shown simply by identifying minor differences between plaintiff's qualifications and those of successful applicants," but only by demonstrating an "overwhelming" merit disparity. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Moreover, we acknowledge that it is not our role to "act as a super personnel department that second guesses employers' business judgments." *Simms v. Oklahoma ex rel Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1329 (10th Cir. 1999).

Here, Santana compares herself to James Leahy, who was promoted to captain in the Relief Factor Management System ("RFMS") unit, and claims that she was significantly more qualified for this position. She points to her higher

skills assessment exam score and her greater experience, both as a sergeant and specifically as a supervisor in the specialized RFMS office. However, Santana does not argue that her interview performance was stronger than Leahy's. Instead, she contrasts her exceptional annual reviews to Leahy's allegedly substandard work as a captain in the RFMS unit.

Santana's evidence fails to establish an "overwhelming" disparity between her qualifications and those of Leahy. Both candidates received assessment scores high enough to be placed in a pool of candidates qualified for a promotion to captain. Once applicants reached the interview process, the panelists were free to select any of the candidates in the group without regard to score. Therefore, Santana's higher score alone does not demonstrate pretext. *See Jones v. Barnhart*, 349 F.3d 1260, 1267 (10th Cir. 2003) (concluding that a promotional candidate's higher assessment-panel score was not dispositive of pretext where the scores served as an initial separation of qualified from unqualified applicants).

Santana's argument also overlooks our practice of assessing pretext by examining "the facts as they appear to the person making the decision to [promote the] plaintiff." *Kendrick*, 220 F.3d at 1231. Santana concedes that the annual reviews were not considered in the promotion process. Furthermore, evidence of Leahy's performance as a captain could not have been considered at the time promotional decisions were made. We agree with the district court that "[m]any of Ms. Santana's proffered arguments are simply her subjective opinion that she

was better qualified and the male applicants were less qualified." *See Simms*, 165 F.3d at 1329-30 (an employee's opinion about his or her qualifications does not give rise to a material factual dispute).

However, evidence of pretext may include the use of subjective criteria. *Simms*, 165 F.3d at 1328. Although "[s]ubjective considerations are not unlawful per se[,] . . . [o]bviously subjective decision making provides an opportunity for unlawful discrimination." *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981). Santana argues that the promotion process at issue here provided just such an outlet for discrimination. She claims the panelists applied no selection criteria "against which candidates can be measured," resulting in a "selection process based upon much more subjective and amorphous standards, known and fathomable only to the decision maker." While there is certainly a level of subjectivity in any interview-based selection process, Santana provides no evidence that the interviewers used their discretion as a means for unlawful discrimination. The panelists asked every applicant the same three questions and then ranked the candidates based on their responses. Santana never discredits the City's explanation that she was not ranked highly, and therefore not selected, because she did not answer the questions completely. The interviewers thought, and Santana agreed, that she did not present herself as a strong candidate for captain. In sum, Santana has failed to "raise a genuine doubt about Defendant's motivation," *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1200 (10th

Cir. 2000), or produce evidence refuting or showing that the Sheriff's Department's stated reasons for not promoting her were implausible, inconsistent, or unworthy of credence. Thus, summary judgment was proper.

B. **Disparate Impact**

We turn next to Santana's assertion that the promotional interview process had a disparate impact on female candidates. After reviewing the district court's standing analysis, we find that Santana's claim was improperly dismissed.

As the trial court correctly observed, constitutional standing requirements apply with equal force to Title VII discrimination claims. Santana must demonstrate her "personal stake in the outcome of the case" by showing that "[she] had been denied an available position for which [she] was qualified." *Coe v. Yellow Freight,* 646 F.2d at 451. The record reveals that Santana has done just that. In *Coe*, the plaintiff was unable to point to an available position for which he was qualified. *Id.* Here, Santana undisputedly met the minimum qualifications necessary to be considered for promotion to the open position of captain. She asserts that she was the victim of discrimination because the interview selection process resulted in a disparate impact on female candidates. She therefore meets the standing requirements as set forth in *Coe*.

The district court's contrary conclusion implies that where a plaintiff's disparate treatment claim is dismissed, she lacks standing to proceed under a disparate impact theory. Such a holding conflates the two distinct theories of

discrimination. A claim of disparate impact, as opposed to disparate treatment, does not require a showing of discriminatory motive or intent. *Id.* at 450; *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 669-70 (7th Cir. 1996) (concluding that a failure to prove discriminatory intent as to a disparate treatment claim does not preclude success on a disparate impact claim). For Santana to have standing to proceed with a disparate impact claim, she need not demonstrate that the interviewers rated her poorly because of her gender. Therefore, the district court erred by dismissing Santana's disparate impact claim for lack of standing.

**C. State Law Breach of Contract**

We agree with the district court's resolution of Santana's state law claim for breach of contract. Santana argues that "[p]roof of intentional discrimination is not an element to prove a breach of contract claim." However, because she failed to prove intentional discrimination, she cannot show that the City's promotion process was not based solely upon merit and the ability to perform the work. Santana has not presented evidence that the City breached any of the provisions of the Denver Charter and the accompanying Career Services Rules. Summary judgment was proper.

**D. Testimony of Dr. Lynn Sanders**

After the close of discovery, Santana requested to re-open discovery in order to take the deposition of Dr. Lynn Sanders, an official at the Denver County

Jail who allegedly witnessed discriminatory conduct in 1996. According to

Santana, Dr. Sanders' deposition testimony would show pretext and that all

promotions were a sham.

We review discovery rulings for abuse of discretion. *Smith v. United*

*States*, 834 F.2d 166, 169 (10th Cir. 1987). Santana did not disclose Dr. Sanders'

purported testimony through Rule 26 disclosure or written responses to discovery

requests. The district court upheld the magistrate judge's ruling, finding that

Santana did not exercise due diligence in regard to this witness. Dr. Sanders was

available to Santana before discovery closed, yet, without good cause, Santana

failed to disclose her as a witness until after the discovery deadline. The district

court acted within the bounds of discretion in enforcing the discovery deadline.

**E. Discovery**

Santana's final argument is that the magistrate judge's September 2004

order excluding any witness and exhibits not listed in the pre-trial order was an

abuse of discretion. Defendants moved to strike 36 exhibits from the final

pretrial order that had never been disclosed by Santana, or were disclosed after

the close of discovery. The magistrate judge agreed and excluded any exhibits

that were not listed or designated in a timely fashion. The district court affirmed

that decision. Santana responds that the court could not effectively consider

exhibits that were never submitted to the court for review. She further asserts

that there was no harm in admitting the documents because the trial date had been

delayed.  We agree with the district court.  It is generally not an abuse of discretion for a court to exclude evidence based upon failure to timely designate. *See generally Worm v. American Cyanamid Co.*, 5 F.3d 744, 749 (4th Cir. 1993) (finding no abuse of discretion and upholding the denial of motion for additional discovery because there had been adequate time for discovery and the requesting party had not made a timely request); *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208-09 (5th Cir. 1992) (finding no abuse of discretion and upholding the denial of a discovery motion because requesting party had failed to make the request until trial was imminent and the discovery deadline was impending).

### III. Conclusion

For the reasons stated above, we **REVERSE** the district court's grant of summary judgment to the City on Santana's claim of disparate impact, and we **REMAND** for further proceedings on that claim.  In all other respects, the district court's judgment is **AFFIRMED**.  We **GRANT** Santana's motion to supplement the record.