**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 11, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PARIND S. SHAH,

    Plaintiff-Appellant,

v.

THE STATE OF OKLAHOMA, ex rel.
The Oklahoma Department of Mental
Health and Substance Abuse; GRIFFIN
MEMORIAL HOSPITAL,

    Defendants-Appellees.

No. 11-6305
(D.C. No. 5:10-CV-01335-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH**, **HOLLOWAY**, and **MATHESON**, Circuit Judges.

Dr. Parind S. Shah appeals from the district court's grant of summary

judgment in favor of the State of Oklahoma ex rel. the Oklahoma Department of

Mental Health and Substance Abuse and Griffin Memorial Hospital on his 42 U.S.C.

§§ 2000e to 2000e-17 claim for race and national origin discrimination and his

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

42 U.S.C. § 1981 claim for retaliation.  Exercising jurisdiction under 28 U.S.C.
§ 1291, we affirm.

## I.    BACKGROUND

Dr. Shah, an East Indian and a graduate of the Government Medical College in Surat, India, was employed by Griffin Memorial Hospital, a mental health facility operated by the Oklahoma Department of Mental Health and Substance Abuse, to participate in its four-year psychiatry residency program.  The residency program consisted of seven residents from Pakistan, two from the Philippines, one from Africa, six from China, five from India, one from Russia, one from Iran, one from Korea, one from Egypt, one from Holland, and eight from the United States, including an African American and a Native American.

The Graduate Medical Education Committee (GMEC)[1] awarded Dr. Shah a contract for each of the three years he participated in the residency program.  During the three years, he failed three rotations supervised by three different doctors in three different subject areas—neurology, child psychiatry, and outpatient psychiatry.  He was allowed to repeat the neurology rotation and passed.  In addition to failing the rotations, he experienced many performance problems during his residency.[2]

---

[1] The GMEC consisted of one member from Africa, two from Pakistan, one from India, and eight Americans, including two African Americans.

[2] The record contains a litany of performance problems attributed to Dr. Shah. He makes cursory attempts to contest some of them, but not the following: (1) lacking an ability to prioritize; (2) asking not to be paged when he was on call so that he could sleep; (3) making findings about a patient he did not examine;

(continued)

During Dr. Shah's third year, Dr. Lori Hake, Director of Residency Training, notified him by letter on May 13, 2009, that the GMEC had decided to discontinue his residency for the fourth year because he had failed, and would not be allowed to repeat, the child psychiatry rotation. The letter also indicated that he had been urged previously to improve his English skills and his ability to interact and empathize with patients.

Dr. Shah appealed to the GMEC for reconsideration. In a five-page letter dated July 9, 2009, he requested a remedial plan for the failed rotation and renewal of his contract. He wrote that Dr. William Tankersley, an attending physician at the Children's Resource Center, told him he would fail the child psychiatry rotation at its start. Dr. Shah stated that he had advised Dr. Hake of this incident. Dr. Shah further wrote that Dr. Alicia Thompson, also of the Children's Resource Center, used harsh words to criticize his performance but failed to provide him with performance feedback. He noted that her failure to allow him to repeat the child psychiatry

_____

(4) making errors concerning medication in discharge instructions; (5) failing to show up for work or leaving early without notification; (6) referring to the children at that facility as inmates; (7) lecturing rather than listening to patients; (8) working poorly with other health care professionals; (9) failing to complete appropriate dictations for two new assessments; (10) failing to do a psychiatric assessment; (11) incorrectly documenting medical problems and examinations; (12) failing to evaluate a child he was asked to assess; (13) documenting a medical assessment he did not do; (14) failing to provide orders for detoxification of alcohol dependent patients; and (15) providing patient care and safety at a level below that of a third-year resident.

rotation due to poor interpersonal skills showed her hostility towards him. The letter did not allege race or national origin discrimination.

The GMEC responded in a letter signed by Dr. Hake. The GMEC declined to change its decision. The letter stated that Dr. Shah could not function competently at the year-three level. It stated that his poor communication skills compromised patient care and mentioned his frequent inability to respond positively to constructive criticism and his consequent failure to improve his performance. The letter also stated that it was unlikely his problems could be remediated in light of his past performance. It also indicated that for the remainder of the year-three program, Dr. Shah would have enhanced supervision during his outpatient mental health rotation and while taking calls at Griffin Memorial Hospital. Finally, the letter warned Dr. Shah that the GMEC would consider early termination of the year-three contract if performance concerns persisted.

A month later, after Dr. Shah failed the outpatient psychiatric rotation, Dr. Hake, on behalf of the GMEC, notified Dr. Shah of his removal from the hospital's call schedule and reiterated that he would not be offered a fourth-year contract. Additionally, she informed him that he would not receive credit for the third year of residency due to the failed rotations.

After his employment ended, Dr. Shah filed this action alleging race and national origin discrimination and retaliation. Defendants moved for summary judgment, which the district court granted. The court determined that Dr. Shah had

failed to present a prima facie case of discrimination or retaliation and failed to

produce evidence of pretext. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

"We review the grant of summary judgment de novo, applying the same

standards as the district court." *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947

(10th Cir. 2011). Summary judgment is proper only "if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law." Fed. R. Civ. P. 56(a). In our review, "we examine the record and

all reasonable inferences that might be drawn from it in the light most favorable to

the non-moving party." *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1058

(10th Cir. 2009) (internal quotation marks omitted). "Unsupported conclusory

allegations, however, do not create an issue of fact." *MacKenzie v. City & Cnty. of

Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005).

### B. *Discrimination Claims*

Like the district court and the parties, we evaluate Dr. Shah's race and national

origin discrimination claims under the burden-shifting framework of *McDonnell

Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, Dr. Shah

must first produce evidence of a prima facie case of race or national origin

discrimination. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114-15

(10th Cir. 2007) (citing *McDonnell Douglas*, 411 U.S. at 802, and recognizing that,

on summary judgment, parties have burden of production, not persuasion).  If he does so, defendants then must proffer a legitimate, nondiscriminatory reason for deciding not to renew his residency contract for the fourth year.  *See id.*  If defendants make a sufficient proffer, the burden shifts back to Dr. Shah to produce evidence indicating that the nondiscriminatory reason was a pretext for discrimination.  *Id.*

We do not address the prima facie case step because this case is most efficiently resolved on the strong evidence establishing a nondiscriminatory basis to terminate Dr. Shah's residency and the lack of evidence that this basis was a pretext for discrimination.

Defendants presented the following nondiscriminatory reasons for failing to renew Dr. Shah's residency contract:  (1) he failed three rotations (but was allowed to repeat one and did pass on the second try); and (2) there were numerous instances of substandard performance and his inability to administer safe and appropriate patient care.[3]  Dr. Shah has not presented evidence to show that these legitimate, nondiscriminatory reasons for deciding not to renew Dr. Shah's residency contract were a pretext for discrimination.

Dr. Shah can show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [defendants] did not act for the

---

[3] See footnote 2 for examples of Dr. Shah's poor performance.

asserted nondiscriminatory reasons." *Crow v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196 (10th Cir. 2011) (internal quotation marks omitted). Pretext may also be shown by providing direct evidence discrediting the proffered rationale or by showing other similarly situated employees were treated differently. *Id.* "[M]ere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 864-65 (10th Cir. 2007) (internal quotation marks omitted).

Dr. Shah contends he was terminated based on his accent because his termination from the child psychiatry rotation and dismissal from the residency program focused on his alleged problems with the English language.

"[C]omments regarding a plaintiff's accent may constitute circumstantial evidence of discrimination based on national origin." *Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir. 2009); *see* 29 C.F.R. § 1606.1 (defining national origin discrimination to include "denial of equal employment opportunity . . . because an individual has . . . linguistic characteristics of a national origin group").

The evidence indicates that doctors commented several times on Dr. Shah's need to improve his English language skills. But no evidence of critical comments regarding his accent appears in the record. And no evidence suggests that any comments were discriminatory. Instead, the evidence shows that the comments were good faith suggestions to improve his interpersonal communication skills, which are

- 7 -

essential for patient care in psychiatry and to his ability to fulfill residency position requirements.

As further evidence of pretext, Dr. Shah asserts that he received awards for two articles he wrote during his residency. But these awards do not support pretext because written communication is not the same as oral communication. He further argues that (1) he was allowed, as a matter of common practice, to repeat the neurology rotation but was not allowed to repeat the child psychiatry rotation; (2) he was commended for his patient interview techniques and interpersonal skills by a few residents; and (3) the only complaint on the child psychiatric evaluation was that his communication skills needed improving.

Despite these assertions, no evidence suggests defendants' nondiscriminatory reasons were a pretext for discrimination. Indeed, defendants identified numerous performance deficits that far exceed the proof needed to establish a legitimate, nondiscriminatory reason for Dr. Shah's termination. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005). The evidence conclusively supports the defendants' honest belief that they denied Dr. Shah a year-four contract based on his unacceptable performance, which threatened patient care and safety. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010) (requiring employer to honestly believe reasons it gave and to act in good faith based on what it believed).

No evidence suggests the adverse employment decision was based on Dr. Shah's accent, race, or national origin. The evidence shows instead that Dr. Shah

was terminated based on performance deficiencies that compromised patient care. The district court correctly entered summary judgment for the defendants on the discrimination claims.

### C. Retaliation Claim

To state a prima facie case of retaliation, Dr. Shah must show that (1) he "engaged in a protected activity; (2) [defendants] took an action that a reasonable [resident] would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action." *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (internal quotation marks omitted). Dr. Shah cannot establish he engaged in protected activity before he was terminated. His two attempts to do so fail because the pretermination examples he gives have no support in the record as protected activity, activity in "opposition to discrimination," *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).

First, although Dr. Shah contends he engaged in protected activity because he complained to Dr. Hake that Dr. Tankersley in December 2008 subjected him to verbal abuse, Dr. Shah admitted at his deposition that he never complained to Dr. Hake that the verbal abuse was related to race or national origin.

Second, Dr. Shah also contends he experienced discrimination while in the child psychiatry rotation because Dr. Thompson in February 2009 complained about his work but refused to address any problems with him. And due to his issues with

Dr. Thompson, he claims that he was not allowed to complete the rotation or repeat it, resulting in his dismissal from the residency program. But again, he admitted at his deposition that he never complained to anyone that Dr. Thompson discriminated against him because of his race or national origin.

We agree with the district court that Dr. Shah could not provide support for protected activity occurring before he received notice on May 13, 2009, that he would not receive a fourth-year residency contract. He never mentioned discrimination in his July 9, 2009, five-page appeal letter. Only after Dr. Shah learned that he would not receive a contract for the fourth year did he complain of discrimination based on race and national origin. He did so for the first time in his EEOC complaint filed on March 22, 2010.

We agree with the district court that Dr. Shah failed to meet his burden of producing evidence sufficient for a prima facie case of retaliation.

### III.    CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Scott M. Matheson, Jr.
Circuit Judge