**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

AMY BANDI,

      Plaintiff - Appellant,

v.

CAROLYN W. COLVIN, Acting
Commissioner of the United States Social
Security Administration,

      Defendant - Appellee.

No. 14-6224
(D.C. No. 5:13-CV-01173-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

    Amy Bandi sued the Social Security Administration ("SSA"), alleging the SSA

violated Title VII of the Civil Rights Act of 1964. She asserted the SSA

discriminated against her on the basis of race and sex when it failed to promote her to

an open position and promoted an African-American man instead. The district court

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

granted summary judgment in favor of the SSA, and Ms. Bandi appeals. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

We will present a brief background of the case here and discuss additional facts in the analysis section.

Ms. Bandi, a Caucasian female, is employed as a Title II SSA Claims Representative ("CR") in the Oklahoma City SSA office. In the fall of 2012, she applied for promotion to a Title II Technical Expert ("TE") position.

Ms. Bandi submitted an application for the TE position, which is referred to by its form name—"SSA-45." The parties also refer to the SSA-45 as the employee's "resume." She also submitted an Occupational Questionnaire. Human Resources ("HR") used the questionnaires to compile a best-qualified list ("BQL"). Ms. Bandi and Stephen Gaines were both placed on the BQL.

Michael Griffin, an African-American male, is the District Manager of Ms. Bandi's office and made the promotion decision. He could select any of the candidates on the BQL list. He selected Mr. Gaines, an African-American.

Mr. Griffin provided additional information about his decision-making process in his declaration. He stated that he spoke with Leah Jackson, the first-line supervisor for Ms. Bandi and Mr. Gaines, and asked for her recommendation. Ms. Jackson gave both Mr. Gaines and Ms. Bandi favorable recommendations. Because of this, Mr. Griffin explained that he based his selection primarily on the candidates' SSA-45s.

He said that Ms. Bandi's SSA-45 contained two misspellings, including the title of the position sought, and that Mr. Gaines's SSA-45 did not contain any misspelled words. Mr. Griffin stated that: "No spelling errors demonstrated to me an attention to detail and diligence in reviewing work product before submitting it on-line." Aplt. App. at 54.

He also said Ms. Bandi's SSA-45 had strange formatting with extra blank pages and several pages with the same page number; Mr. Gaines's SSA-45 did not exhibit these formatting irregularities. "Overall, the strange formatting communicated to me that [Ms. Bandi] did not invest adequate time and effort in organizing her resume." *Id*. at 55.

Mr. Griffin further noted that: (1) Ms. Bandi listed awards she had received but failed to describe how she earned them, whereas Mr. Gaines described what he did to earn his awards; (2) Ms. Bandi focused on her past contributions to her SSA work, while Mr. Gaines focused on his present contributions; (3) Mr. Gaines's SSA-45 highlighted activities in providing training and technical guidance to coworkers more than Ms. Bandi's did; and (4) Mr. Gaines described his efforts to resolve complex and difficult issues while Ms. Bandi did not.

Mr. Griffin concluded his declaration by stating that he selected Mr. Gaines for promotion "[b]ased on his superior SSA-45." *Id*. at 56.

In district court, Ms. Bandi alleged the SSA discriminated against her on the basis of sex and race in violation of Title VII when it failed to select her for

promotion.  The SSA successfully moved for summary judgment.  Ms. Bandi now appeals.[1]

## II. **DISCUSSION**

### A. *Standard of Review*

We review de novo the district court's decision granting summary judgment in favor of the SSA.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  We apply the same standard as the district court and view the facts in the light most favorable to Ms. Bandi as the non-moving party.  *Id.*

Summary judgment is appropriate if the SSA shows "there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is genuine if a rational jury could find in favor of the nonmoving party on the evidence presented." *Smothers*, 740 F.3d at 538 (internal quotation marks omitted).

### B. *The McDonnell-Douglas Framework*

We employ the same *McDonnell-Douglas* framework the district court used to analyze Ms. Bandi's race-discrimination claim.  This burden-shifting test first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), involves three steps.  First, the plaintiff must establish a prima facie case of discrimination.

---

[1] The district court granted summary judgment on Ms. Bandi's claim for sex discrimination after Ms. Bandi admitted in her response to summary judgment that gender was not a factor in her non-selection.  Ms. Bandi does not raise any issue regarding her sex-discrimination claim on appeal.

If she is successful, the burden shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its employment action. If the employer does so, then the burden shifts back to the plaintiff to show that the employer's reason is pretextual. *Smothers*, 740 F.3d at 538-39.

## C. *Analysis*

### 1. **Legitimate, Non-Discriminatory Reason**

The SSA admitted that Ms. Bandi can establish a prima facie case of race discrimination[2] but offered a legitimate, non-discriminatory reason for its employment decision. The SSA stated that Mr. Griffin based his selection primarily on the candidates' SSA-45s and that Mr. Gaines's SSA-45 conveyed a more favorable impression regarding his ability to perform the TE position.

In its decision, the district court concluded that the SSA "ha[d] clearly articulated a legitimate, non-discriminatory reason for [Ms. Bandi's] non-selection." *Id*. at 408. Ms. Bandi does not challenge this conclusion on appeal; instead, she focuses her appellate arguments on the pretext issue. She has therefore forfeited any challenge to the district court's determination that the SSA articulated a legitimate, non-discriminatory reason for her non-selection. *See Bronson v. Swensen*, 500 F.3d

---

[2] The district court noted in its decision that Title VII race discrimination claims are not "'limited to those individuals who are members of historically or socially disfavored groups,'" and that courts, including this one, have permitted so-called "'reverse discrimination'" claims to proceed. Aplt. App. at 405-06 (quoting *Notari v. Denver Water Dep't,* 971 F.2d 585, 588 (10th Cir. 1992)). To establish a prima facie case involving reverse discrimination, the plaintiff "must, in lieu of showing that [s]he belongs to a protected group, establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Notari*, 917 F.2d at 589.

1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

2. **Pretext**

The district court concluded that Ms. Bandi had "failed to produce evidence of pretext upon which a jury could infer discriminatory motive—i.e., [Ms. Bandi] . . . failed to demonstrate that Defendant's assertion that Gaines' resume created a more favorable impression than Plaintiff's resume is unworthy of belief." Aplt. App. at 410 (internal quotation marks omitted). On appeal, Ms. Bandi contends the district court failed to consider all of her evidence.

Ms. Bandi bears the burden of proving pretext. She may "establish pretext by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 864 (10th Cir. 2007) (internal quotation marks omitted).

Courts "must proceed with caution when considering the relative merits of individual employees." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308 (10th Cir. 2005). "We will draw an inference of pretext where the facts assure us that the plaintiff is better qualified than the other candidates for the position." *Santana*, 488 F.3d at 865 (internal quotation marks omitted). But "[w]e have cautioned that pretext cannot be shown simply by identifying minor differences between plaintiff's

- 6 -

qualifications and those of successful applicants, but only by demonstrating an overwhelming merit disparity." *Id*. (internal quotation marks omitted). The parties agree this standard applies in this case.

    a. *Evidence about the merits of the candidates*

Ms. Bandi first contends that the district court ignored evidence "favoring [her] as, overwhelmingly, the more meritorious candidate." Aplt. Br. at 26. She asserts Mr. Griffin suppressed her receiving an award for preventing fraud and she was therefore unable to claim it on her SSA-45. She contends this fact suggests that Mr. Griffin's belief that Mr. Gaines "was more meritorious—based on his SSA-45— is not only unworthy of belief, but is based upon evidence [Mr.] Griffin manipulated." *Id*. at 27. She also discusses the differences in qualifications between herself and Mr. Gaines and asserts that she "was significantly more qualified." *Id*. at 28. As the following discussion indicates, Ms. Bandi has failed to show she is the "overwhelmingly meritorious candidate" and thus has not shown pretext.

        i.  The Fraud Prevention Award

Ms. Bandi's evidence about her fraud prevention award does not create a material factual dispute on pretext for two reasons. First, the evidence does not show that Mr. Griffin suppressed the award. Second, the absence of an award on her SSA-45 did not affect Mr. Griffin's promotion decision because he did not rely on

Mr. Gaines's receipt of an anti-fraud award[3] and Ms. Bandi's lack of an award as a reason for his decision.

In August 2012, Mr. Griffin received an email regarding Ms. Bandi's help on a fraud case that resulted in a $73,064.30 judgment in favor of the SSA. Mr. Griffin forwarded the email to the other managers in the office and stated "FYI – I'll submit an anti-fraud award next week and I'll read the email in the next staff meeting." Aplt. App. at 307. Ms. Bandi stated in her affidavit that she did not learn of the nomination until November 2012 or later, after a supervisor mentioned it to her. As a result, she was not able to include it on her SSA-45.

When asked about the anti-fraud award in his deposition, Mr. Griffin testified he does not recall what he did about it, but if he said in the email he was going to submit the award to the regional office and announce it at a staff meeting, then he would have done so. He also explained that the regional office issues the award and he does not follow up on the awards. Aplt. App. at 232-37.

Although Mr. Griffin may not have submitted the award nomination to the regional office or announced it at a staff meeting, the evidence does not show Mr. Griffin suppressed the award. He emailed the other managers in the office informing them of his intention to nominate Ms. Bandi for the award.

More importantly, the receipt or non-receipt of an anti-fraud award did not affect Mr. Griffin's selection decision. In his declaration, the only mention of awards

---

[3] Mr. Gaines's SSA-45 reflects that he received an anti-fraud award in March 2012 after he helped the SSA obtain a $53,000 judgment in its favor.

and the differences between the two candidates is that Ms. Bandi only listed the amount of money she received for each of her awards and failed to explain what she did to earn them, while Mr. Gaines described exactly what he did to earn his awards. Because the anti-fraud award was not part of Mr. Griffin's stated legitimate reason for his selection decision, any factual dispute regarding Mr. Griffin's conduct in submitting or following up on the award nomination is not material to pretext.

ii. Qualifications

Ms. Bandi argues the district court failed to address "evidence favoring [her] as, overwhelmingly, the more meritorious candidate." Aplt. Br. at 26. She asserts that she: completed a temporary TE detail of 120 days, while Mr. Gaines started a temporary TE detail but quit after 30 days; she had "twice the experience" as Mr. Gaines; and she had served as his mentor in years past. *Id*. at 27-28.

The differences Ms. Bandi has identified do not demonstrate an "overwhelming merit disparity." Although Ms. Bandi has worked at the SSA longer than Mr. Gaines, "[m]ere seniority does not support a finding that she was qualified for a different job," *Durham v. Xerox Corp*., 18 F.3d 836, 840 (10th Cir. 1994). Similarly, the temporary TE details were not materially different. Both candidates gained experience through their temporary assignments, and the difference between 30 days and 120 days does not make Ms. Bandi "overwhelmingly" more qualified. Finally, although Ms. Bandi mentored Mr. Gaines, he also has served as a mentor for new CR employees. Because both candidates had mentoring experience, we see no significant disparity in that area either.

We also note both Ms. Bandi and Mr. Gaines were placed on the BQL list, which meant they were both qualified for promotion to the TE position. And Ms. Bandi admitted in response to the SSA's motion for summary judgment that Mr. Griffin was free to select anyone from the BQL. She also described Mr. Gaines as "a great CR" in an email to Ms. Jackson and Mr. Griffin after she learned of the promotion decision. Aplt. App. at 83. The record does not demonstrate the "overwhelming" disparity in qualifications that our case law requires to infer pretext from the SSA's reason to select Mr. Gaines instead of Ms. Bandi.

b. *Evidence about the decision-making process*

Ms. Bandi also asserts a jury could infer pretext because Mr. Griffin (i) gave conflicting testimony on what he relied on to make the decision, (ii) declined to follow Ms. Jackson's recommendation that he speak with a prior supervisor, (iii) failed to complete written candidate evaluation forms or rank the candidates as he normally would, and (iv) failed to follow the SSA's Merit Promotion Plan procedures. But for the reasons addressed below, none of these issues, individually or collectively, demonstrate that the SSA's stated reason for selecting Mr. Gaines is pretextual. That is, none of this evidence shows that Mr. Griffin's legitimate, non-discriminatory reason for his decision—that Mr. Gaines's SSA-45 gave him a more favorable impression than Ms. Bandi's did—is unworthy of belief.

i.   Conflicting Testimony

Ms. Bandi contends Mr. Griffin gave conflicting testimony about whether he relied only on the SSA-45 or whether he relied on the SSA-45 and discussions with Ms. Jackson, the first-line supervisor, as the basis for his decision.

In his declaration, Mr. Griffin stated he reviewed the SSA-45s and spoke with Ms. Jackson.  He noted that Ms. Jackson gave both candidates a favorable recommendation and, therefore, he relied primarily on the SSA-45s.  *Id*. at 53.  In his deposition, he testified that he considered Ms. Jackson's feedback and the SSA-45s.  *See id*. at 227-28.  In response to interrogatories, he explained that he obtained feedback from the candidates' supervisor and then paid particular attention to the quality and thoroughness of each person's SSA-45.  *See id*. at 294.  These responses consistently indicate Mr. Griffin considered Ms. Jackson's feedback but that he relied primarily on the SSA-45s.  We do not see a conflict in Mr. Griffin's testimony that would give rise to an inference of pretext.

ii.  Prior supervisor

Ms. Bandi also contends Mr. Griffin's failure to consult with the candidates' prior supervisor suggests that his decision was pretextual.  She notes Ms. Jackson's deposition testimony that she recommended to Mr. Griffin that he speak to the candidates' prior supervisors because she was new to supervising them.  But Mr. Griffin was not required to contact the prior supervisors, and he chose not do so.  His decision to rely on the feedback he received from Ms. Jackson—who was the

- 11 -

candidates' current supervisor and gave them both favorable recommendations—does not show the SSA's reason for its employment decision is unworthy of belief.

iii. Evaluation forms and rankings

Ms. Bandi further asserts Mr. Griffin failed to complete candidate evaluation forms or rank the candidates as he normally would, but she has not introduced evidence showing that would be Mr. Griffin's normal procedure. Ms. Jackson testified that a manager might request candidate evaluation forms from her as a supervisor and that she has filled out such forms, but they are not required. No evidence shows Mr. Griffin would normally fill out a candidate evaluation form as the selecting official for a position. Ms. Jackson further testified that a reference check may be either written or oral and that she provided an oral reference for the candidates in this instance.

The SSA also submitted evidence showing that HR rates the candidates when it creates the BQL, but the BQL does not contain the rating information, and the selecting official is prohibited from obtaining the applicants' scores or ratings during the merit promotion process. When asked if he rated the candidates, Mr. Griffin testified that he "didn't assign a numeric, but [he] did consider their knowledge, skills, and abilities." *Id*. at 207. Ms. Bandi's evidence does not demonstrate that Mr. Griffin deviated from his normal procedure during the selection process or that the SSA's stated reason for its employment decision is pretextual.

iv. <u>Merit Promotion Plan</u>

Ms. Bandi additionally argues that Mr. Griffin failed to follow the Merit Promotion Plan during the selection process by not ranking the candidates or maintaining a record of how he made his decision. The SSA counters that the selection process did comply with the Merit Promotion Plan procedures, Mr. Griffin was not required to rank the candidates, and HR maintained a record sufficient to allow reconstruction of the promotion decision. Any factual dispute as to whether Mr. Griffin followed the merit procedures is not material.[4]

Even assuming Mr. Griffin did not follow the Merit Promotion Plan procedures, that does not demonstrate pretext. As we have explained: "The mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal or discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual." *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995). In *Randle*, we also noted that cases in which procedural irregularities suggested illegal discrimination involved disregarded procedures that "directly and uniquely disadvantaged a minority employee." *See id.* at 454 n.20. That is not the case here.

---

[4] Ms. Bandi attempted to introduce testimony that Mr. Griffin did not follow the procedures from Ralph De Juliis, another SSA employee and union steward. The district court noted that this evidence was not material to its conclusion and agreed with the SSA that it was inadmissible. We agree this evidence is not material and see no abuse of discretion in the district court's evidentiary ruling. *See N. Am. Specialty Ins. Co. v. Britt Paulk Ins. Agency, Inc.*, 579 F.3d 1106, 1111 (10th Cir. 2009).

c. *Statistical evidence and evidence about other complaints*

Ms. Bandi contends the district court erred by declining to consider statistical evidence of disparate hiring or promotion practices and other complaints against Mr. Griffin.

i.  Statistical evidence

Ms. Bandi's statistical evidence is a chart contained in her affidavit. She asserts the chart reflects the race of Mr. Griffin's hires from March 29, 2010 to October 5, 2012. It shows that nine African-Americans were promoted or hired during that time period while two Caucasians were promoted or hired. Ms. Bandi offers no explanation in her affidavit as to how she obtained this information. The SSA asserts that Ms. Bandi's list is incomplete and inaccurate, and provided its own evidence of seven Caucasian employees who were promoted or hired during that time period. The SSA further notes that the previous District Manager, not Mr. Griffin, hired one of the African-American women on Ms. Bandi's list.

Even if we consider Ms. Bandi's evidence, it fails to eliminate non-discriminatory explanations for the hiring statistics or to show that more-qualified white applicants applied for those positions and were not selected. As we have explained: "In order for statistical evidence to create an inference of discrimination, the statistics must . . . eliminate nondiscriminatory explanations for the disparity. In other words, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between *comparable* individuals." *Turner v. Pub. Serv. Co. of Colo.*, 563

- 14 -

F.3d 1136, 1147 (10th Cir. 2009) (brackets and internal quotation marks omitted).

Ms. Bandi has not done that.

The chart identifies each hired person's name and race, whether each was promoted or newly hired, and the date of the employment action (sometimes only giving a year and sometimes giving a specific date). Ms. Bandi offers no information about who else applied for the positions and what their qualifications were as compared to the persons who were hired or promoted. Her "statistical evidence does not take into consideration nondiscriminatory explanations for the disparity—for example, differences in various individuals' job performance, experience, and training." *Sanders v. SW Bell Tel. L.P.,* 544 F.3d 1101, 1110 (10th Cir. 2008). "Because the statistics fail to account for these variables, they do not constitute evidence of pretext." *Id.*; *see also Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir. 1994) ("Plaintiff's statistical evidence compares only the ages of the employees retained with the ages of those laid off . . . . Plaintiff's statistical evidence fails to eliminate nondiscriminatory explanations for disparate treatment—*i.e.,* that those laid off had lower performance evaluations and rankings than those retained— and therefore does not permit an inference of pretext.").

ii. Other complaints

Ms. Bandi also argues that she presented evidence of other employee complaints that were filed against Mr. Griffin and that "[e]vidence of an employer's treatment of other employees is relevant to its discriminatory intent." Aplt. Br. at 35.

- 15 -

The evidence shows eleven men and women claimed either sex or race discrimination arising from Mr. Griffin's employment decisions.

To be relevant, evidence regarding other employees' discrimination claims must be reasonably tied to the plaintiff's claim. The evidence must involve the same type of discrimination during the same time period under similar circumstances. *See Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000). Ms. Bandi's evidence must therefore show that the other complaints against Mr. Griffin alleged race discrimination by Caucasian applicants who were not selected for positions that were filled by African-Americans during the same time period under similar circumstances.

From the evidence Ms. Bandi cites, only three of the complaints appear to be based on race. One involved a woman who identified herself as black or Jamaican, so she is not similarly situated to Ms. Bandi. The race of the remaining complainants or of the persons selected is not clear from the cited pages. *See* Aplt. App. at 170-87.[5]

At his deposition, Mr. Griffin mentioned a man who filed a claim for race and sex discrimination, but his testimony does not disclose that person's race or the race of the candidate who was selected for the position. *See id.* at 170-73. He mentioned another man who filed a complaint based on race regarding a reassignment request

---

[5] Ms. Bandi also cites to three other pages in the appendix, but two of those pages do not provide any information about the discrimination complaints, *see* Aplt. App. at 200, 205, and the other page simply lists the names of the complainants and states that their complaints were based on gender or race, *see id.* at 358.

for the Oklahoma City office, but the record does not reflect that person's race or the race of the person who was selected for reassignment instead of him. *Id*. at 176-77. Mr. Griffin's testimony about the remaining complainants shows the claims were for sex or disability discrimination or does not disclose the nature of the claims. *See id*. at 178-87.

In her reply brief, Ms. Bandi cites to her affidavit in which she identifies at least four of the complainants as Caucasian. *See* Aplt. Reply Br. 23 (citing Aplt. App. at 263-64). But other than the first person mentioned at Mr. Griffin's deposition, no evidence shows whether these complainants filed claims based on sex or race. Ms. Bandi never explains the circumstances of any of the discrimination complaints or ties them to the circumstances in her case.

Although Ms. Bandi argues generally that Mr. Griffin had "a pattern of discrimination," *see* Aplt. Br. at 35, she has not shown there were other complaints involving circumstances that are reasonably related to her claim, *see id*. at 35-36. We therefore see no basis to infer that the SSA's stated reason for its employment decision was pretextual.

### III. **CONCLUSION**

Ms. Bandi concedes on appeal that Mr. Griffin might have believed that Mr. Gaines's SSA-45 "was better crafted," *id*. at 21, but wants us to ignore the deficiencies in her application. Mr. Gaines and Ms. Bandi were both on the list of qualified applicants for the TE position. Mr. Griffin selected Mr. Gaines because his SSA-45 was better than Ms. Bandi's, and that is a legitimate, non-discriminatory

- 17 -

reason for making an employment decision. Ms. Bandi failed to present evidence that she was "overwhelmingly" the more qualified candidate or that Mr. Griffin's conclusion about the relative merits of the SSA-45s is unworthy of belief. We therefore agree with the district court that summary judgment in favor of the SSA was proper.

Ms. Bandi objects to the way the SSA made its employment decision—by relying primarily on how pre-qualified candidates presented themselves in their SSA-45s. But our role is not to second guess the SSA's selection process when it has articulated a legitimate, non-discriminatory basis for its decision. As the district court explained:

> The court's duty is to look at the facts as they appear to the decision maker and to not act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments. Thus, the Court will not second guess the legitimacy of Defendant's decision to rely primarily on the candidates' resumes during the selection process.

Aplt. App. at 409 (internal quotation marks and citations omitted).

Ms. Bandi's evidence on summary judgment did not create a material dispute of fact as to whether the SSA's reason for its selection decision was pretextual. Accordingly, we affirm the district court's judgment.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge


- 18 -