**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

TARUS GREEN,

  Plaintiff-Appellant,

v.

JP MORGAN CHASE BANK
NATIONAL ASSOCIATION, a
Delaware corporation,

  Defendant-Appellee.

No. 11-5153
(D.C. No. 4:10-CV-00365-GKF-TLW)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

Tarus Green appeals the district court's grant of summary judgment to his

former employer, JP Morgan Chase Bank ("Chase"), in his employment

discrimination action. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in

part, but vacate the grant of summary judgment on certain claims that were not

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

administratively exhausted and remand for the district court to dismiss those claims for lack of subject matter jurisdiction.

*Background*

Mr. Green is an African-American whom Chase employed as a licensed personal banker in Tulsa, Oklahoma. His 2006 production numbers placed him near the top of Chase's list of its Oklahoma personal bankers. In October 2006, he submitted his first application for a promotion to business banker. Chase deferred filling the business-banker position until it hired Jason Groves as area manager in December 2006, but eventually the field was narrowed to Mr. Green and an external candidate, a Caucasian male who had been recommended to Mr. Groves by Mr. Groves' father. Mr. Groves met briefly with Mr. Green on January 4, 2007. Mr. Groves' notes from the meeting indicate that he thought that Mr. Green had a chip on his shoulder and he had a concern about Mr. Green's "coachability." Aplt. App. at 350. Nevertheless, he told Mr. Green that he would have a formal interview before the entire hiring panel the next week. But that interview never occurred.

Mr. Groves testified that after his meeting with Mr. Green, he discussed his impressions of Mr. Green with another member of the hiring panel, district manager Michelle Ward. She revealed some concerns that Mr. Green "seemed to have some attitude issues. Production was sufficient . . . . He was a good producer but was going to be a coaching challenge." *Id.* at 333. She also stated that she was concerned

about his ability to work with three different branch-manager personalities.  When

Mr. Groves asked her why the panel had asked him to meet with Mr. Green, in light

of those concerns, she told him:

> We felt like you being new on the ground, not having any preconceived
> notions of any individuals or their skill set or their background, you
> know how rumors go throughout the markets, we wanted you to
> interview Tarus because we felt like based on his production, he
> deserved the opportunity to be interviewed for that position, and we
> wanted you to sit down and interview him and make it your decision.

*Id.* at 334.  Ultimately, the full hiring panel interviewed only the other candidate and

offered him the job.  Mr. Groves informed Mr. Green of the decision on or about

January 16.

On January 31, 2007, Mr. Green submitted a letter of complaint to a Chase

performance evaluation analyst.  It does not appear that this person had any

responsibility to handle complaints of discrimination; as best he could recall,

Mr. Green contacted her "because of her association with some organization in the

bank that I thought might have been sympathetic to looking at minority issues."  *Id.*

at 98.  On February 2, he filed an intake questionnaire with the Oklahoma Human

Rights Commission ("OHRC").  Then, on February 7, he submitted a formal written

complaint of discrimination to a Chase human resources employee.  He supplemented

that letter with further allegations on February 12.  The lengthy supplement included

complaints about, among other issues, possible bias in favor of persons with strong

ties to Oklahoma; working conditions and Ms. Ward's style of management; a

fractious relationship between Mr. Green and a co-worker that went unaddressed

allegedly because the co-worker had a personal friendship with Ms. Ward; and the existence of inappropriate sexual relationships among employees that led to favoritism.

Before any resolution of his internal complaint, however, on February 15, 2007, Mr. Green submitted a letter of resignation, stating that he had "been offered a position equal in job responsibilities as the personal banker position, but with a 45% base pay increase and comparable incentive opportunity." *Id.* at 168. The undisputed facts show that Mr. Green had initially explored employment with the other company as early as December 7, 2006, and he had submitted pre-employment forms to that company on January 26, 2007, before he ever filed his internal written complaint with Chase. Also, the record contains paycheck stubs reflecting that the other company paid wages to Mr. Green for the pay periods spanning February 1-15 and February 16-28, 2007.

For personal reasons, Mr. Green remained at his new job only a few weeks, resigning on March 27, 2007. The next day, he filed a charge of discrimination with the OHRC, alleging that Chase's failure to promote him was the result of racial discrimination. After receiving a right-to-sue letter, he filed a complaint alleging discrimination, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Oklahoma Anti-Discrimination Act, Okla. Stat. Ann. tit. 25, § 1302 ("OADA"), as well as violations of 42 U.S.C. § 1981.

In deciding Chase's motion for summary judgment, the district court held that Mr. Green had not administratively exhausted his Title VII/OADA retaliation and constructive-discharge claims. With regard to the Title VII/OADA discrimination claims, the court held that Mr. Green had failed to show that Chase's legitimate non-discriminatory reasons for hiring the other candidate were pretext for racial discrimination. As for § 1981, Mr. Green's summary-judgment brief argued that he was constructively discharged under that statute. The court, however, concluded that he had pleaded his § 1981 claim not as constructive discharge, but as unfair discipline. Moreover, the court held that even if a § 1981 constructive-discharge claim had been adequately pleaded, Mr. Green had failed to establish that the circumstances amounted to a constructive discharge. Accordingly, the court granted summary judgment to Chase on all claims.

### Discussion

Mr. Green appeals the district court's conclusions that: (1) he did not exhaust his Title VII/OADA retaliation claims; (2) he failed to show that Chase's proffered reasons for not promoting him were pretext for racial discrimination in violation of Title VII and the OADA; and (3) he did not plead constructive discharge in violation of § 1981. We review the grant of summary judgment de novo, viewing the evidence in the light most favorable to Mr. Green. *See Johnson v. Weld Cnty., Colo.*, 594 F.3d 1202, 1207 (10th Cir. 2010). Summary judgment is appropriate when "the movant

- 5 -

shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

*Retaliation*

Mr. Green acknowledges that his formal OHRC charge focuses on racial discrimination and does not mention retaliation. But relying on *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), he asserts that the district court erred in deciding that he had not administratively exhausted the retaliation claim because the intake questionnaire he had earlier submitted to the OHRC clearly set forth allegations of retaliation.

In *Holowecki*, the Supreme Court held that a filing other than a formal charge may be deemed to be a charge if it contains the required information and can reasonably be construed as a request for agency action. *Id.* at 402, 405. But in *Holowecki*, the claimant had filed *only* an intake questionnaire (along with a supplemental affidavit) before filing her lawsuit; she filed a formal charge only after filing her complaint. *See id.* at 394, 406. Thus, *Holowecki* did not address the situation in this case, where a claimant files an initial intake questionnaire, then timely files a formal charge that becomes the basis of the agency's investigation, all before commencing a lawsuit.

Nothing in *Holowecki* indicates that an intake questionnaire must be treated as a charge, no matter the circumstances. In fact, the Court stated the opposite. *See id.* at 405 ("[T]he agency is not required to treat every completed Intake Questionnaire

as a charge."). Although we recognize that "[d]ocuments filed by an employee with the EEOC should be construed, to the extent consistent with permissible rules of interpretation, to protect the employee's rights and statutory remedies," *id.* at 406, we agree with the reasoning of a post-*Holowecki* panel of the Third Circuit that it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings, *see Barzanty v. Verizon Pa., Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010).

In *Barzanty*, the court noted that the formal charge "serves to define the scope of the Commission's investigation and to notify the defendant of the charges against it." *Id.* In Mr. Green's case, for example, the OHRC proceeded solely on the allegations in the formal charge; its decision discusses whether the denial of promotion was discrimination, not retaliation. As the Third Circuit stated, "[a] plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer." *Id.* Similarly, another court has distinguished *Holowecki* and stated that "permitting Title VII plaintiffs to routinely reach back to the contents of intake questionnaires to expand the scope of a subsequent lawsuit would, if not eviscerate, then at the very least significantly undermine the policies underlying the exhaustion requirement Congress decided to

- 7 -

impose upon Title VII plaintiffs." *Ahuja v. Detica Inc.*, __ F. Supp. 2d __, No. 09-02246 (CKK), 2012 WL 1268301, at *8 (D. D.C. Apr. 16, 2012).

Accordingly, the district court appropriately held that Mr. Green did not exhaust his retaliation claims. Nevertheless, having made this determination, the district court should have dismissed all unexhausted Title VII and OADA claims for lack of jurisdiction rather than granting summary judgment to Chase. *See Jones v. Runyon*, 91 F.3d 1398, 1399 & n.1 (10th Cir. 1996) (holding that exhaustion of administrative remedies is a "jurisdictional prerequisite" to filing suit under Title VII); *Shackelford v. Okla. Dep't of Corr.*, 182 P.3d 167, 168 (Okla. Civ. App. 2007) (same for claims under the OADA). Thus, we must vacate the grant of summary judgment on the unexhausted Title VII and OADA claims (claims 3, 5, 7 and 8) and remand for the district court to dismiss those claims for lack of jurisdiction.

*Failure to Promote*

Chase asserted that Mr. Groves "did not recommend that Green move on in the interviewing process because Green demonstrated [a] combative attitude during the interview and he did not seem to have strong ties to the Tulsa community." Aplt. App. at 39-40. It further asserted that Mr. Groves recommended the successful candidate because "he demonstrated experience in managing multiple branches and employees, business development experience, and had strong ties to the Tulsa business community." *Id.* at 40. Citing *Santana v. City and County of Denver*,

488 F.3d 860, 865 (10th Cir. 2007), the district court held that Mr. Green had failed to show that these legitimate, nondiscriminatory reasons were pretext for discrimination because there was no overwhelming disparity in the candidates' qualifications. The court further held that even though Chase had not listed ties to the Tulsa community as a job requirement, its reliance on that factor failed to show pretext because such contacts would enable the business banker to fulfill the undisputed job responsibility of seeking new customers from referrals.

Mr. Green argues that he presented sufficient evidence to create a genuine issue of material fact regarding discrimination. He distinguishes the facts of his case from *Santana*. As he did before the district court, he contrasts his qualifications with those of the successful candidate, and he argues that Chase did not list ties to the Tulsa business community in the job posting. And he attacks the other proffered reasons for not promoting him, such as Mr. Groves' perception of his attitude.

The district court, however, did not err in concluding that the evidence in this case is insufficient to show pretext for discrimination. It is well-established that "our role isn't to ask whether the employer's decision was wise, fair or correct, but whether it honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith on those beliefs." *Johnson*, 594 F.3d at 1211 (brackets and internal quotation marks omitted). Therefore, "to suggest that an employer's claim that it hired someone else because of superior qualifications is pretext for discrimination rather than an honestly (even if mistakenly) held belief, a

plaintiff must come forward with facts showing an overwhelming disparity in qualifications." *Id.* (internal quotation marks omitted). These are the principles for which the district court cited *Santana*, *see* 488 F.3d at 865, which are sound no matter the factual differences between *Santana* and this case.

We agree with the district court that Mr. Green failed to present sufficient evidence to meet these standards. Obviously Mr. Green was qualified for the position, but so was the successful candidate. Mr. Green's qualifications were superior in some respects, and the other candidate's qualifications were superior in other respects. Mr. Green's perception that he is more qualified does not create a material factual dispute, *see Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1329 (10th Cir. 1999), and the relative parity between the candidates distinguishes this case from *Mohammed v. Callaway*, 698 F.2d 395 (10th Cir. 1983), upon which Mr. Green relies. In *Mohammed*, an unqualified candidate was hired over a qualified minority candidate. *Id.* at 399-401. But where neither candidate "is clearly better qualified, it is within the employer's discretion to choose among them so long as the decision is not based on unlawful criteria." *Simms*, 165 F.3d at 1330 (internal quotation marks omitted); *see also Jaramillo v Colo. Judicial Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005) (noting that there was no showing of pretext where plaintiff conceded that employer could have a good-faith belief that successful candidate was at least as well qualified as plaintiff). Moreover, as the district court noted, Chase's preference for the successful candidate's ties to Tulsa's business

community was supported by the business-banker job description.[1]  We affirm the grant of summary judgment to Chase on the Title VII and OADA claims challenging the failure to promote.

*Section 1981 Claim*

Mr. Green also argues that the district court erred in concluding that he did not plead constructive discharge under § 1981.  He points out that the opening line of his complaint's § 1981 section reincorporated all previous paragraphs, and that one of those earlier paragraphs stated, "Plaintiff was constructively discharged in March, 2007 when Defendant refused to investigate his claims of discrimination." Aplt. App. at 13.  But the rote incorporation of all previous paragraphs does not overcome the plain language of the § 1981 claim itself:  "By unfairly disciplining the Plaintiff the Defendant and its agents have violated 42 U.S.C. § 1981."  *Id.* at 14. Moreover, in contrast to the § 1981 section, other counts explicitly allege constructive discharge in violation of Title VII and the OADA.  The district court did not err in holding that Mr. Green had not pleaded constructive discharge in violation of § 1981.

---

[1]   Mr. Green argues that Mr. Groves had no way to assess his ties to the Tulsa community since he never asked Mr. Green about them.  But the record contains a copy of Mr. Green's resume with Mr. Groves' notes about their meeting.  Under "Community Associations," the resume lists only Texas organizations.  Aplt. App. at 350.  Moreover, Mr. Green has never identified what ties to the Tulsa business community that he would have discussed if asked, nor shown how such ties would rival the successful candidate's significant community involvement.

Further, the district court also correctly concluded that the circumstances do not rise to the level of a constructive discharge. Mr. Green ultimately took the position that a constructive discharge arose from the denial of promotion. But the evidence is insufficient to establish that under all the circumstances of this case, a reasonable person would have been compelled to resign when he was not promoted to the business-banker position. *See Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003) (concluding there was no constructive discharge when plaintiff was denied promotion and then experienced incidents that she perceived as racially hostile); *Thomas v. Denny's, Inc.*, 111 F.3d 1506, 1514 (10th Cir. 1997) (concluding there was no constructive discharge when plaintiff was denied several promotions over a period of years). For these reasons, we affirm the grant of summary judgment to Chase on the § 1981 claim.

### *Conclusion*

The judgment of the district court is AFFIRMED in part. The grant of summary judgment on claims 3, 5, 7, and 8 is VACATED and REMANDED so that the district court can dismiss those claims without prejudice for lack of jurisdiction.

Entered for the Court

Stephen H. Anderson
Circuit Judge