**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 12, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

BRYAN "SHANE" JONES,

      Plaintiff - Appellant,

v.

JULIE NEEDHAM; NEEDHAM
TRUCKING, L.L.C.,

      Defendants - Appellees.

--------------------------

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

      Amicus Curiae.

No. 16-6156

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 5:15-CV-00978-HE)**

---

Bill V. Wilkinson, Tulsa, Oklahoma, for Plaintiff - Appellant.

Joshua W. Solberg (Elizabeth Bowersox, with him on the brief), of McAfee &
Taft A Professional Corporation, Oklahoma City, Oklahoma, for Defendants -
Appellees.

Philip M. Kovnat (P. David Lopez, General Counsel, Jennifer S. Goldstein,
Associate General Counsel and Lorraine C. Davis, Assistant General Counsel,
with him on the brief), of Equal Employment Opportunity Commission, Office of
General Counsel, Washington, D.C., for Amicus Curiae.

Before **KELLY**, **EBEL**, and **BACHARACH**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiff-Appellant Bryan "Shane" Jones appeals from the district court's dismissal of his Title VII sex discrimination claim against Defendant-Appellee Needham Trucking, LLC and his state law tort claim for wrongful interference with a contractual relationship against Defendant-Appellee Julie Needham. See Jones v. Needham, No. CIV-15-0978-HE, 2016 WL 2659618 (W.D. Okla. May 6, 2016). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

Background

Mr. Jones worked as a mechanic for Needham Trucking from May to November of 2014. 1 Aplt. App. 46. According to Mr. Jones, he was fired because he would not have sex with Ms. Needham, his direct supervisor and a shareholder of the business.

Mr. Jones completed an intake questionnaire with the EEOC. He checked the boxes for "Sex" and "Retaliation" as the reasons for his claims of employment discrimination, and also wrote out "sex har[as]sment." Id. at 43. He provided a comparator, another mechanic who "was treated better because he had sex with

Ms. Needham." Id. And he listed two witnesses, both of whom would testify that they knew of the sexual harassment. Id. at 45. In response to questions seeking more detailed explanations, Mr. Jones wrote "[s]ee attached." Id. at 43. That referenced a six-paragraph statement by Mr. Jones, which concluded with "I was terminated because I refused to agree to Ms. Needham's sexual advances and I rejected all such efforts by her." Id. at 46.

Apparently the attachment never made it to the EEOC, nor did the EEOC alert Mr. Jones that it was missing. See 2 Aplt. App. 69–71. Nevertheless, the EEOC prepared the following charge form on behalf of Mr. Jones:

> I. I have been employed with Needham Trucking LLC since on or about May, 2014. During my employment I was subjected to sexual remarks by owner, Julie Needham. I complained to General Manager, Jonathan Needham and Stephanie Needham about the sexual harassment. Nothing was done. On or about November 3, 2014, Julie Needham terminated my employment.
>
> II. No reason was given for the sexual harassment. No reason was given for not stopping the sexual harassment. No reason was given for my retaliatory termination.
>
> III. I believe I have been discriminated against and retaliated against for participating in a protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended.

1 Aplt. App. 41.

After the EEOC issued a right-to-sue letter, Mr. Jones filed suit against Needham Trucking and Ms. Needham with claims of sexual harassment, negligence, negligent or intentional infliction of emotional distress, wrongful

interference with a contractual or business relationship, and violation of the Oklahoma Employment Security Act of 1980 ("OESA"). Id. at 9–15. Mr. Jones made clear that his sexual harassment claim took the form of both hostile work environment discrimination and quid pro quo discrimination that culminated in a tangible employment action "result[ing] from his refusal to submit to a supervisor's sexual demands." Id. at 10.

Needham Trucking and Ms. Needham moved to dismiss all but Mr. Jones's hostile work environment claim, id. at 22–23, and Mr. Jones voluntarily dismissed his claims for negligence and infliction of emotional distress. Aplee. Supp. App. 16. The district court then granted the partial motion to dismiss. It held that Mr. Jones failed to exhaust his administrative remedies for his quid pro quo sexual harassment claim, that his state law tort claim was precluded by the Oklahoma Anti-Discrimination Act ("OADA"), and that his OESA claim failed for want of a private right of action. Jones, 2016 WL 2659618, at *1–3. Mr. Jones moved to dismiss with prejudice his remaining claim for hostile work environment sexual harassment, which the district court granted. Order Granting Motion to Dismiss, Jones v. Needham, No. 5:15-cv-00978-HE (W.D. Okla. June 7, 2016), ECF No. 35. This appeal followed.[1]

---

[1] Although Mr. Jones filed his notice of appeal before his motion to dismiss his remaining claim and before the district court had ruled on that motion or entered a final judgment, Fed. R. App. P. 4(a)(2) provides that a notice of appeal filed after the court announces a decision but before the entry of judgment "is treated as filed on the date of and after the entry." See also Coll v. First Am.

Discussion

Although the district court described the exhaustion of administrative remedies as a jurisdictional requirement under Title VII, <u>Jones</u>, 2016 WL 2659618, at *1, our recent cases suggest that exhaustion in this context might be better characterized as a claims-processing obligation.  <u>See</u> <u>Gad v. Kan. State Univ.</u>, 787 F.3d 1032, 1038 (10th Cir. 2015); <u>see also</u> <u>Arabalo v. City of Denver</u>, 625 F. App'x 851, 860 (10th Cir. 2015) (unpublished); <u>Pham v. James</u>, 630 F. App'x 735, 737–38 (10th Cir. 2015) (unpublished).[2]  Regardless, our review of the district court's dismissal for failure to state a claim or for lack of subject matter jurisdiction is de novo.  <u>SEC v. Shields</u>, 744 F.3d 633, 640 (10th Cir. 2014) (Rule 12(b)(6)); <u>McKenzie v. U.S. Citizenship & Immigration Servs.</u>, 761 F.3d 1149, 1154 (10th Cir. 2014) (Rule 12(b)(1)).

A.    <u>Quid Pro Quo Sexual Harassment and Exhaustion of Administrative Remedies</u>

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual . . . because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Sexual

---

<u>Title Ins. Co.</u>, 642 F.3d 876, 884–85 (10th Cir. 2011).

   [2]  Although not precedential, we find the reasoning of these and the other unpublished opinions cited in this opinion to be instructive.  <u>See</u> 10th Cir. R. 32.1.

harassment has long been included in this proscription of sex discrimination.  See

Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65–66 (1986); 29 C.F.R. §

1604.11(a).  Such sexual harassment traditionally takes one of two forms.  The

first is "quid pro quo" harassment, in which a plaintiff "proves that a tangible

employment action resulted from a refusal to submit to a supervisor's sexual

demands."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998).  The

second is "hostile work environment" harassment, in which conduct that does not

result in a tangible employment action is nevertheless so "severe or pervasive"

that it creates an abusive working environment.  Id. at 754; see also Morris v.

City of Colo. Springs, 666 F.3d 654, 663 (10th Cir. 2012).

Importantly, the terms "quid pro quo" and "hostile work environment" do

not appear in the statutory or regulatory text.  Ellerth, 524 U.S. at 752.  Instead,

the labels originated in the academy, were incorporated by the courts, and have

since "acquired their own significance."  Id.  The Supreme Court has warned that

they "are helpful, perhaps, in making a rough demarcation between cases in which

threats are carried out and those where they are not or are absent altogether, but

beyond this are of limited utility."  Id. at 751.

Before filing suit, a Title VII plaintiff must first exhaust administrative

remedies by, among other things, filing a sufficient charge of discrimination with

the EEOC.  See § 2000e-5(e)(1); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S.

101, 104–05 (2002).  Aside from requiring that a charge be in writing and made

under oath, Congress provided scant detail on what the charge should look like and instead gave the EEOC the responsibility of fleshing out those requirements. See § 2000e-5(b). The EEOC, in turn, has set up a system by which a person will submit information to the agency, typically in the form of an intake questionnaire, and then the EEOC will render assistance in the filing of the charge. 29 C.F.R. § 1601.6(a). The resulting charge document should contain a "clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." Id. § 1601.12(a)(3).

The purpose of administrative exhaustion is two-fold: "1) to give notice of the alleged violation to the charged party; and 2) to give the EEOC an opportunity to conciliate the claim." Jones v. UPS, Inc., 502 F.3d 1176, 1185 (10th Cir. 2007) (citation omitted). Given these goals, the charge document must contain the general facts concerning the discriminatory actions later alleged in the legal claim. See id. at 1186. Thus, a plaintiff's claim in federal court "is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." Id.

This overview raises two questions about the district court's determination that Mr. Jones did not properly exhaust his administrative remedies. First, which was the proper document to look at? And second, was it sufficient?

The district court seemed to assume that the charge form prepared by the EEOC would necessarily be deficient because of the missing attachment to the

- 7 -

intake questionnaire. See Jones, 2016 WL 2659618, at \*1–2. Indeed, at times Mr. Jones himself seemed to assume this.[3] See Aplee. Supp. App. 7 (blaming the EEOC for failing to "clearly articulate[] *quid pro quo* sexual harassment claims" in the charge papers). Accordingly, the district court looked at the intake questionnaire itself to see if it could be construed as a charge document sufficient for exhaustion.

While we acknowledge that there are times in which a different filing, such as an intake questionnaire, can constitute a charge for certain purposes, see, e.g., Fed. Express Corp. v. Holowecki, 552 U.S. 389, 401, 405 (2008), the general rule remains that we typically look to the charge form if one exists. This is because the charge form, not a previous filing, is given to the employer to notify it of the potential claims against it and ordinarily determines the scope of the EEOC's investigation. See 42 U.S.C. § 2000e-5(b); Occidental Life Ins. Co. of Cal. v. EEOC, 432 U.S. 355, 359–60 (1977); see also Green v. JP Morgan Chase Bank Nat'l Ass'n, 501 F. App'x 727, 731–32 (10th Cir. 2012) (unpublished).

---

[3] Mr. Jones did, however, preserve an argument that regardless of what filing constituted the final charge — i.e., whether it was the intake questionnaire or the charge form — strict compliance with the EEOC's regulations in 29 C.F.R. § 1601.12(a) is not required "so long as the charge the Commission receives is a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." Aplee. Supp. App. 12 (quoting Semsroth v. City of Wichita, 304 F. App'x 707, 712 (10th Cir. 2008) (unpublished) (emphasis, internal quotation marks, and citation omitted)). Since the charge form was before the district court, we think this preserved an alternative argument that it, and not the questionnaire, constituted the actual charge.

Turning to the charge form itself, then, the question is whether the facts alleged are "sufficiently related to the claim [made in the complaint] such that those facts would prompt an investigation of the claim." Jones, 502 F.3d at 1186 (citation omitted). We liberally construe the charge document in determining whether this requirement has been met. Id.

Needham Trucking argues that the facts alleged were insufficient to put it on notice of the quid pro quo harassment claim made in Mr. Jones's amended complaint. Aplee. Br. at 11. It takes issue with the EEOC's argument that the facts alleged were sufficient to exhaust both a quid pro quo and a hostile work environment claim. We are not persuaded. Needham's argument relies on a complete bifurcation between the two forms of sexual harassment, see id. at 8–9, but the Supreme Court has cautioned that they are not wholly distinct claims. See Ellerth, 524 U.S. at 754. Rather, they are shorthand descriptors to delineate different ways in which sexual harassment can occur. In the first, the tangible employment action that results from a refusal to submit to a supervisor's demands "itself constitutes a change in the terms and conditions of employment that is actionable under Title VII." Id. In the second, it is the "severe or pervasive" conduct that effectively alters the conditions of employment so as to violate Title VII. See id.; Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1058 (10th Cir. 2009). Both factual scenarios lead to the same place: sexual harassment that violates Title VII's proscription against sex discrimination in the workplace. See

Gregory v. Daly, 243 F.3d 687, 698–99 (2d Cir. 2001).  Though the descriptors

matter a great deal insofar as they reveal what elements are needed to prove the

specific claim of sexual harassment, see Ellerth, 524 U.S. at 752–54, they are not

so unrelated that the facts of the two scenarios could not overlap, or that an

investigation resulting from facts specific to one category could not also fall

within the scope of an investigation of the other.

Despite Needham's implicit argument to the contrary, we do not think this

understanding is new for this circuit.  Needham emphasizes our past cases in

which we have continued to use the words "quid pro quo" as evidence that we

also continue to recognize "two distinct types of sexual harassment claims."

Aplee. Br. at 8–9.  The implication is that perhaps things would be different if the

case came about in another circuit that has retired that formulation.  Cf., e.g.,

Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 n.4 (11th Cir. 2004) (using

term "tangible employment action" instead of "quid pro quo" to describe

"harassment that culminates in a discharge, demotion, or undesirable

reassignment").  But as we have explained before, though the labels might differ,

the underlying meaning does not.  Pinkerton, 563 F.3d at 1059 n.4 ("[W]e use the

'quid pro quo' terminology only insofar as it might be useful to show that the

harassment culminated in a tangible employment action." (citing Ellerth, 524 U.S.

at 753–54)); see also Gregory, 243 F.3d at 699 (continuing to use term "quid pro

quo," emphasizing that "[w]hat matters . . . is simply whether an employment

action was based on plaintiff's sex," and refusing "to create a *separate doctrinal category* for employers who make [employees'] workplace success contingent on submission to a supervisor's sexual demands").

A charge need only "describe generally" the alleged discrimination, 29 C.F.R. § 1601.12(b), in order to "give notice of an alleged violation to the charged party," Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). Mr. Jones's form has the boxes checked for his allegations of sex-based discrimination and retaliation, and it recounts that he was "subjected to sexual remarks," that "Julie Needham terminated [his] employment," and that no reason was given for the termination. 1 Aplt. App. 41. We think this was sufficient to alert Needham to the sexual harassment allegations and to trigger an investigation that would look into what the sexual remarks were, why Mr. Jones was fired, and whether the two events were connected. Though the complaint Mr. Jones filed was more detailed than his charge form, this is to be expected given that a complaint must meet Rule 8 pleading standards and contain sufficient facts to render it plausible. See Fed. R. Civ. P. 8(a); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

B.      Wrongful Interference with a Contractual or Business Relationship

The OADA "provides for exclusive remedies within the state of the policies for individuals alleging discrimination in employment on the basis of . . . sex." Okla. Stat. tit. 25, § 1101(A). The OADA is analyzed similarly to Title VII

claims. See id. § 1305(A); see also Tilghman v. Kirby, 662 F. App'x 598, 601 (10th Cir. 2016) (unpublished). The district court concluded that since Mr. Jones's tortious interference claim was based on the same set of facts as his sex discrimination claim it fell within the OADA's limitation of common law remedies. We agree.

Mr. Jones contends that "[n]either in the Amended Complaint nor in other pleading does [he] allege that the tortious interference is caused by the sexual harassment." Aplt. Br. at 20. But in his amended complaint, Mr. Jones 1) adopted "[a]ll preceding paragraphs" detailing the facts for the sex discrimination claims, 2) alleged that he had a business or contractual relationship with Needham Trucking with which Ms. Needham wrongfully interfered, and 3) claimed that he was damaged in excess of $10,000 because of this interference. 1 Aplt. App. 13. Thus, the only facts in this statement are those he expressly adopted from the prior claims — which is to say, those relating to the alleged sexual harassment and resulting claims.

With this said, it could be that the same facts simply provide the basis for two different legal theories that are sufficiently distinct so as not to be precluded by the OADA. This sometimes happens in the Title VII context when courts have found that the separately-actionable tort is "highly personable" in nature. See Brock v. United States, 64 F.3d 1421, 1423 (9th Cir. 1995) (rape claim not barred by Title VII's exclusive-remedy provision). Applying this logic, a district court

in Oklahoma has held that a plaintiff could pursue both her OADA claim and her common law assault claim, even though both claims were founded on the same facts alleging that her supervisor sexually touched her without her consent. See Cunningham v. Skilled Trade Servs., Inc., No. CIV-15-803-D, 2015 WL 6442826, at *3–5 (W.D. Okla. Oct. 23, 2015).

This exception does not apply to Mr. Jones's claim. Oklahoma defines the elements of a claim for tortious or malicious interference as: "1) interference with a business or contractual right; 2) malicious and wrongful interference that is neither justified, privileged, nor excusable; and 3) damage proximately sustained as a result of the interference." Tuffy's, Inc. v. City of Okla. City, 212 P.3d 1158, 1165 (Okla. 2009). Compare this with the elements of a quid pro quo form of sexual harassment: 1) tangible job benefits that are 2) conditioned on an employee's submission to conduct of a sexual nature, which leads to 3) adverse job consequences when the employee refuses to submit to the sexual conduct. See Pinkerton, 563 F.3d at 1060. The elements are remarkably similar when the alleged malicious conduct is, as here, the conditioning of job benefits on the employee's submission to sexual conduct.

AFFIRMED in part, REVERSED in part, and REMANDED. Mr. Jones's motion to certify the OADA question to the Oklahoma Supreme Court is DENIED.

- 13 -

*Jones v. Needham*, 16-6156,

**BACHARACH**, J., dissenting.

The majority concludes that the Charge exhausts the plaintiff's Title VII claim. But in my view, the plaintiff waived this issue by (1) failing to present it in district court and neglecting to urge plain error on appeal and (2) failing to develop this issue in his opening brief in the appeal. Based on these waivers, I would not consider the Charge. And I regard the Intake Questionnaire as immaterial to the exhaustion requirement. Thus, I believe that the district court properly dismissed the action.

1.  **The Plaintiff's Two Waivers Regarding the Sufficiency of the Charge**

*The first waiver*. The plaintiff's first waiver resulted from his failure to discuss the sufficiency of the Charge when responding to the defendant's motion to dismiss in district court.

The majority refers to page 7 of the plaintiff's response brief filed in district court. Maj. Op. at 8 n.3. This page contains only one pertinent sentence: "The regulation also dictates, however, that strict compliance with these requirements is not necessary so long as the Charge the Commission receives is 'a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" Supp. App'x at 12 (quoting *Semsroth v. City of Wichita*, 304 F. App'x 707, 712 (10th Cir. 2008) (unpublished)). The plaintiff follows this

statement with this: "The more important question is whether the written statement generally describes the action complained of. Here, it is clear the written statement by Shane Jones [which is the attachment to the Intake Questionnaire, not the Charge] meets this requirement." *Id.*

The entire thrust of the plaintiff's argument in district court[1] was that: (1) the EEOC, not Mr. Jones, had prepared the Charge papers and (2) the EEOC, through neglect, had failed to adequately include the substance of the plaintiff's claim in the Charge. The plaintiff makes this clear in the concluding paragraph to his response to the motion to dismiss: "In the instant case, it is clear that Plaintiff Shane Jones alleged *quid pro quo* sexual harassment. However, when the EEOC prepared the Charge papers, the EEOC failed to specifically allege *quid pro quo* sexual harassment. This was clearly an oversight by the EEOC. If the employer's Motion to Dismiss is granted, the Plaintiff Shane Jones will be penalized for the EEOC's negligence in preparing the Charge." *Id.* at 15; *see also id.* at 12 ("The attachment [to the Intake Questionnaire] clearly evidences *quid pro quo* sexual harassment and should have been included by the EEOC in the Charge papers. The EEOC failed to include in the Charge papers the claim described in the written attachment which was part of the responses to the Intake Questionnaire.").

---

[1] *See* Supp. App'x at 10-15.

2

The plaintiff's omission of this argument in district court resulted in a forfeiture. *See Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1238 (10th Cir. 2016). Forfeited arguments are ordinarily reviewable under the plain-error standard. *Id.* at 1239. But the plaintiff has not asked us for plain-error review. As a result, the plaintiff waived his appellate argument on the sufficiency of the Charge. *See McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010) ("[E]ven if [the appellant's] arguments were merely forfeited before the *district court*, her failure to explain in her opening appellate brief . . . how they survive the plain error standard waives the arguments in *this* court." (emphasis in original)).

*The second waiver*. The plaintiff's second waiver took place in his opening brief in this appeal. There the plaintiff argued that the Intake Questionnaire was sufficient, but he did not develop an argument involving the Charge. There were only two references to the Charge in the opening brief's discussion of exhaustion.

In one reference, the plaintiff stated that a "pivotal question" was whether the "Intake Questionnaire (APP 42-50) and Charge (APP 41) [met] minimum requirements for the exhaustion of remedies." Plaintiff's Opening Br. at 11. After identifying this "pivotal question," the plaintiff failed to discuss the Charge or say why it sufficed for exhaustion. Instead,

the plaintiff answered the "pivotal question" by focusing solely on the Intake Questionnaire.

The second reference again identified "the question" as whether the plaintiff's information in "(APP1)[2] would prompt an investigation of the quid pro quo claim." Plaintiff's Opening Br. at 15. Then, in answering this question, the plaintiff referred solely to the information in the Intake Questionnaire, concluding that it had sufficiently described the underlying claim. *Id*. at 18. The Charge was again ignored.

These were the only two references to the Charge in the opening brief's discussion on exhaustion. Though the plaintiff twice referred to the Charge in framing the issue, he never discussed the Charge or stated why it would suffice for exhaustion. The plaintiff's two isolated references to the Charge failed to develop an argument regarding the Charge, resulting in a waiver. *See Illie v. Holder*, 613 F.3d 1019, 1026 n.4 (10th Cir. 2010) (stating that the appellant's failure to sufficiently develop an argument in his opening brief constituted a waiver).

After the plaintiff filed his opening brief, the EEOC filed an amicus brief, arguing that the Charge was sufficient. But we typically do not entertain an amicus curiae's argument for reversal that had not been presented in the appellant's opening brief. *E.g.*, *Tyler v. City of Manhattan*,

---

[2]    "APP 1" is the first page of a docket sheet, not the Charge. I assume that the plaintiff intended to cite page 41, which was the Charge.

4

118 F.3d 1400, 1404 (10th Cir. 1997). I would apply our typical practice here and decline to consider this argument.

We may assume, for the sake of argument, that this argument was developed in the plaintiff's reply brief. But we do not ordinarily consider appellate arguments for reversal made for the first time in an appellant's reply brief. *E.g.*, *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016). I would follow that practice here.[3]

* * *

In my view, the plaintiff twice waived the sufficiency of the Charge. Thus, I would not address this issue.

## 2. Insufficiency of the Intake Questionnaire for Exhaustion

Mr. Jones also contends that the Intake Questionnaire satisfies the exhaustion requirement. I disagree.

An intake questionnaire can sometimes constitute a charge when a separate charge is not submitted. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402-03 (2008). To constitute a charge, however, the intake questionnaire must request the EEOC to take remedial action to protect the employee's rights or settle the dispute. *Id*.

---

[3] Oral argument provided the defendant with its first opportunity to address the plaintiff's argument regarding the sufficiency of the Charge. When given this opportunity, the defendant objected and argued that the plaintiff had waived an argument on the sufficiency of the Charge. Oral Arg. at 15:43-16:16.

In the Intake Questionnaire, the plaintiff stated that he wanted to file a separate charge; and he ultimately followed through by separately submitting a charge. Thus, the majority focuses on the Charge rather than the Intake Questionnaire. Maj. Op. at 8. The majority's focus is correct because the Intake Questionnaire never went to the employer. *Id*. As a result, the Intake Questionnaire is immaterial to the exhaustion requirement.

## 3. Conclusion

In my view, Mr. Jones

- waived a theory of exhaustion based on the Charge and

- failed to satisfy the exhaustion requirement based on the Intake Questionnaire.

Accordingly, I believe that the dismissal was correct. Because the majority concludes that the Charge suffices for exhaustion, I respectfully dissent.